IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EMILY WILLIAMS                          :

                                    :

   v.                     :    Civil Action No. DKC 24-476

                                    :

SILVER PSYCHOTHERAPY, LLC, et al.       :

                                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case brought by Emily Williams ("Plaintiff") is the motion for summary judgment filed by Defendants Silver Psychotherapy, LLC ("Silver Psychotherapy" or "Defendant") and Katie Silver ("Ms. Silver" or "Defendant," and collectively, "Defendants"). (ECF No. 14). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted in part and denied in part.

## I.    Background[1]

Silver Psychotherapy is a woman-owned business that provides therapy services to a range of clients, including ones with issues such as "trauma, suicidality, mood disorders, and other mental health disorders." (ECF No. 14-2, at 2-3, 6). On October 28,

---

[1] Unless otherwise noted, the following facts are undisputed and construed in the light most favorable to the nonmoving party.

2022, Plaintiff signed an employment agreement ("Agreement") with Silver Psychotherapy and began working as a licensed graduate professional counselor. (ECF No. 14-3). The Agreement required Plaintiff to bill a minimum of twenty-five hours of counseling services a week. (ECF No. 14-2, at 4). Under the Agreement, for Plaintiff to be eligible for health insurance, she needed to meet these minimum hours. (ECF Nos. 14-1, at 5; 14-5, at 2-3). The parties dispute whether this requirement was emphasized or enforced prior to Plaintiff telling Ms. Silver that she was pregnant. (ECF Nos. 14-1, at 4 n.1; 20, at 3). During the sixteen weeks that Plaintiff worked for Silver Psychotherapy before she announced her pregnancy, Plaintiff did not meet the hour requirement. (ECF Nos. 14-1, at 5; 14-7, at 4).

Plaintiff told Ms. Silver that she was pregnant on or about March 23, 2023. (ECF Nos. 20, at 2; 14-1, at 6). Defendants completed a performance review of Plaintiff in March.[2] (ECF No. 14-1, at 6). Both parties attach the evaluation as exhibits, and the content of the evaluation is not disputed. (ECF Nos. 14-8; 20-2). Defendants contend that "[t]he average score of her evaluation in all of these categories was less than a three on a scale of one to five, meaning that the Plaintiff had not met

---

[2] Plaintiff contends that she received the review on March 23, 2020, the same day she told Defendants she was pregnant. (ECF No. 20, at 2).

expectations as a satisfactory employee" (ECF No. 14-1, at 6),
while Plaintiff contends that Ms. Silver told her that she is
"doing a good job" and "[i]f there were any issues, you would know
about them." (ECF No. 20-1, at 6).

In her declaration, Plaintiff stated that on May 18, 2023,
Ms. Silver told Plaintiff that Plaintiff would not be assigned new
clients for the next twelve weeks because "the baby might come
early." (ECF Nos. 20, at 2-3; 20-3, at 2).

Silver Psychotherapy's policy if a therapist must take an
extended leave is to "briefly re-route new, long-term clients from
the schedule of a therapist who needs extended leave (regardless
of the cause), and Defendants replace that work with short-term
clients and numerous other tasks that it pays the therapist to
perform." (ECF Nos. 14-1, at 7; 14-2, at 5-6). "This policy is
implemented uniformly, whether the therapist's need for extended
leave is for medical, family, pregnancy, or other reasons." (*Id.*).
When the leave is expected, Ms. Silver sends a letter to each of
that therapist's patients about one month before the therapist
will begin her leave. (*Id.*)  The letter notifies the patient
that his or her therapist will be on leave, and it allows the
patient to choose whether he or she wants a new therapist in the
interim. (*Id.*) "It is important to send this letter at the right
time," and if the patient receives the letter too early, "patients

3

with attachment and trauma histories can psychologically decompensate." (*Id.*)

Defendants contend that "[t]he purpose of this policy is to ensure that patients with serious trauma issues do not experience a break in continuity with a therapist, just as the patient begins to develop trust with her therapist." (ECF No. 14-1, at 8).[3] Defendants contend that they implemented this policy "over the

---

[3] Defendants further contend that Plaintiff agreed that the process is necessary as they "try to work through the best result for a patient." (ECF No. 14-1, at 8). Defendants also quote Plaintiff as saying "it is 'patient-centric,' and a good thing, to ensure trauma patients can enter a stable relationship and build trust with a therapist." (*Id.*). In her deposition, however, Plaintiff was referring to finding a therapist who would be a good fit for a specific client as "trying to work through the best result for a client." (ECF 14-5, at 23). Additionally, in her deposition, Plaintiff was asked if its fair for a business to send "new clients who might hav[e] long-term relationship needs" to a different therapist if one of the therapists is going to be on leave. (ECF No. 14-5, at 9). Plaintiff responded:

> Yeah, if Silver did not have a wait list. So if the choice was I have all these open clinicians, let me prioritize my length of time, 100 percent that sounds fair. But if you're choosing to keep clients on the wait list instead of let[ting] the pregnant employee see clients, no that doesn't sound right for the client. That doesn't sound patient centric.

(ECF No. 14-5, at 9). The parties do not discuss the waitlist, but Plaintiff states in her declaration that she requested to be assigned "adequate clinical hours from the waitlist to allow [her] to continue full time employment during [her] pregnancy." (ECF No. 20-3, at 3). Therefore, from the record, it is not clear that Plaintiff conceded that Defendants' policy is a good policy.

years" "uniformly and without regard to an employee's specific need for leave." (ECF Nos. 14-1, at 8; 14-7, at 2). Defendants state that they implemented this policy when an employee needed extended medical leave in October 2022, April 2023, and October 2023. Before this employee went on leave "new patients were re-routed to ensure they would receive proper care." (ECF Nos. 14-1, at 8; 14-7, at 2). Additionally, in January 2023, an employee needed extended leave for a surgery and recuperation. "In the weeks prior to these extended absences, [Ms. Silver] again re-routed new patients" to other therapists. (ECF Nos. 14-1, at 8; 14-7, at 2).

Plaintiff contends that she was being assigned fewer clients and then being disciplined for not maintaining her hours, and Ms. Silver threatened to take away Plaintiff's health insurance benefits. (ECF Nos. 20, at 2-3; 20-3, at 1-2). Defendants contend that Plaintiff herself began giving away patients and refused to perform other tasks Defendants offered to allow her to reach the hour requirements. (ECF No. 14-1, at 9). For example, on May 9, 2023, Plaintiff emailed with another therapist asking if she could take over her client until she came back after maternity leave. (ECF No. 20-10, at 2). On May 22, Ms. Silver emailed Plaintiff about a potential short-term client and told Plaintiff to reach out to Molly, the scheduler. (ECF Nos. 14-1, at 10-11; 20-4, at

9).  Plaintiff testified that she does not remember if she ever reached out to Molly as per the emailed instructions.  (ECF Nos. 14-1, at 11; 14-5, at 22).  On May 18, 2023, Silver Psychotherapy also offered Plaintiff ten different administrative tasks[4] to increase Plaintiff's hours, but Plaintiff did not wish to perform any of the tasks.  (ECF Nos. 14-1, at 11; 14-5, at 17; 20-4, at 7).

On May 18, 2023, Plaintiff sent a letter to Ms. Silver stating that she "was being discriminated and retaliated against due to [her] pregnancy as evidenced by the changes to the conditions of [her] employment."  (ECF Nos. 20-3, at 2, 20-5, at 2-4).  On May 23, 2023,[5] Defendants' counsel responded to Plaintiff's letter stating that the changes were due to her impending maternity leave and reiterating the other tasks available to her.  (ECF No 20-6, at 3).  Defendants' counsel also asked Plaintiff to decide whether she wanted to remain a full-time employee and meet the hour requirement or become a part-time employee and lose health insurance benefits.  (ECF No. 20-6, at 3).

---

[4] The parties dispute whether the tasks were paid or unpaid, and if paid, at what rate.  (ECF Nos. 14-5, at 17; 14-2, at 9, 20, at 3).

[5] Defendants state that their counsel sent a letter on May 25, 2023, "reminding her of her contract obligations, as well as reminding her that she was not meeting her 25-hour per week hourly requirement."  (ECF No. 14-1, at 6).

On May 25, Ms. Silver emailed Plaintiff stating she would continue to give Plaintiff short-term clients during her pregnancy. (ECF Nos. 14-1, at 10; 14-5, at 15-16).

On May 26, 2023, Plaintiff sent Ms. Silver a text message "declin[ing] the demotion to part time, declin[ing] the demotion to unpaid additional admin work, and continu[ing] to request being assigned adequate clinical hours from the waitlist to allow [Plaintiff] to continue full time employment during [her] pregnancy." (ECF No. 20-7, at 1). In her declaration, Plaintiff states that on June 1, 2023, Plaintiff had a meeting with Ms. Silver, and Ms. Silver gave Plaintiff "a formal disciplinary write up for insubordination." (ECF No. 20-3, at 3). On June 2, 2023, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex and disability discrimination, and retaliation. (ECF No. 20-8, at 3). That day, Plaintiff emailed Ms. Silver notifying her of the EEOC charge of discrimination. (ECF No. 20-4, at 5). Plaintiff states that after filing the charge of discrimination, Defendants "continued to discriminate and retaliate against [Plaintiff] by restricting the number of [Plaintiff's] clients and assigning . . . administrative and secretarial work" to Plaintiff. (ECF No. 20-3, at 3-4).

7

In order for a licensed graduate professional counselor to become a licensed clinical professional counselor in Maryland, an individual must perform a certain number of hours of direct and indirect clinical counseling services, and supervised clinical experience. (ECF No. 20-3, at 4). As part of an applicant's application process, the applicant's supervisor must confirm these hours "and state whether the supervisor has any reservations about the applicant receiving a license for the independent practice of counseling." (ECF No. 20-3, at 4). In her declaration, Plaintiff states that after she filed her EEOC charge of discrimination, Ms. Silver told Plaintiff "that she would not verify [Plaintiff's] counseling hours" or "support [Plaintiff's] application." (ECF No. 20-3, at 4). On July 21, 2023, Ms. Silver provided multiple negative ratings on Plaintiff's professional reference assessment for the Maryland Department of Health and answered "no" to the question of whether she would "recommend this [a]pplicant for licensure as a clinical professional counselor." (ECF No. 20-9, at 3-4). Plaintiff states that she "was extremely emotionally distressed as a direct result of [Defendants'] discrimination and retaliatory actions." (ECF No. 20-3, at 4). She further states that Defendants' refusal to verify her counseling hours and support her application caused her to be "constructively discharged" on July 23, 2023. (ECF No. 20-3, at 4).

Additionally, Plaintiff states that Defendants began unlawfully withholding her wages. In her declaration, Plaintiff states that she "was owed $11,864.00 for 370.75 'indirect client service hours'" that she performed from November 22, 2022, through July 1, 2023. (ECF No. 20-3, at 2). Plaintiff contends that under the Agreement, she was supposed to be paid $32 an hour, but Defendants failed to pay her for this time. (ECF No. 20-3, at 2).

## II.  Standard of Review

A court will grant a motion for summary judgment when there is no genuine dispute of a material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

## III. Analysis

Plaintiff asserts claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000(e), *et seq.*, ("Title VII") against Silver Psychotherapy, and a claim for violation of the Maryland Wage Payment and Collection Law ("MWPCL") against Silver Psychotherapy and Ms. Silver. (ECF No. 1). In their motion for summary judgment, Defendants argue that summary judgment is appropriate for the Title VII discrimination and retaliation claims because there is no genuine dispute of material fact, and the court should decline to exercise supplemental jurisdiction over the state law claim. (ECF No. 14-1, at 15, 17, 19).

### A.   Counts I and II: Title VII Discrimination and Retaliation Claims

Title VII prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes,

10

> including receipt of benefits under fringe
> benefit programs, as other persons not so
> affected but similar in their ability or
> inability to work, and nothing in section
> 2000e-2(h) of this title shall be interpreted
> to permit otherwise.

42 U.S.C. § 2000e(k).

"Plaintiffs may prove these violations either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (citation omitted). Plaintiff does not argue that she has direct or indirect evidence of discrimination or retaliation, and instead she presses her claims using the *McDonnell Douglas* framework. (ECF No. 20, at 7-8).

> Under the burden-shifting framework, a
> plaintiff must first offer a prima facie case.
> *Lettieri v. Equant*, 478 F.3d 640, 646 (4th Cir.
> 2007). . . . Once a plaintiff makes out a
> prima facie case, the burden shifts to the
> employer to put forth a nondiscriminatory
> explanation for its actions. *Lettieri*, 478
> F.3d at 646. If the employer does so, the
> burden then shifts back to the plaintiff to
> show that the employer's explanation was
> "actually a pretext for discrimination." *Id.*
> (quoting *Hill v. Lockheed Martin Logistics
> Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)
> (en banc)).

*Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649-50 (4th Cir. 2021).

11

### 1. Count I: Title VII Discrimination Claim, Defendant Silver Psychotherapy

Plaintiff alleges that Silver Psychotherapy violated Title VII by giving her less "counseling assignments" and asking her "to perform administrative and secretarial work" because she was pregnant. (ECF No. 1 ¶¶ 38-39). Defendants argue that Plaintiff fails to establish a prima facie case of discrimination,[6] but even if she can establish a prima facie case, Silver Psychotherapy has a legitimate non-discriminatory reason for reassigning long-term patients. (ECF No. 14-1, at 14).

### a. Prima Facie Case

To establish a prima facie case, Plaintiff must show that:

> (1) she is a member of a protected class; (2) her employer took an adverse action against her; (3) she had been fulfilling her employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination, including because the employer left open the position or replaced the plaintiff with someone outside the protected class. [] [*Lettieri*, 478 F.3d at 646]; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 n.8 (4th Cir. 2020).

---

[6] In their motion, Defendants initially assume that Plaintiff establishes a prima facie case (ECF No. 14-1, at 14), and later in their reply in support of their motion, argue that Plaintiff does not establish a prima facie case. (ECF No. 21, at 1-2). Regardless, as discussed below, Defendants have shown a legitimate non-discriminatory reason for their actions.

*Sempowich*, 19 F.4th at 649-50.  It is undisputed that as a pregnant woman, Plaintiff was a member of a protected class.  Plaintiff asserts that Defendants took an adverse action against her by giving her fewer clients and asking her to perform administrative tasks.  The parties dispute whether Plaintiff was fulfilling Defendants' "legitimate expectations" of the weekly twenty-five-hour requirement, or whether those hours were in fact required.  (ECF Nos. 20, at 9; 21, at 1-2).  Nevertheless, even if Plaintiff can show that she was meeting Defendants' legitimate expectations and otherwise establish a prima facie case, Plaintiff cannot show that Defendants' legitimate non-discriminatory reason for reassigning long-term patients is pretext.

**b.    Legitimate Non-discriminatory Reason**

Defendants contend that not assigning Plaintiff new, long-term clients is Silver Psychotherapy's policy for all of the therapists who need to take extended leave, whether for family, medical, or pregnancy.  (ECF Nos. 14-1, at 7-8; 14-7, at 1-2).  Defendants assert that "[t]his policy ensures that patients with the need for stable, trusting relationships will not experience a break in the clinical relationship if a therapist needs to take an extended leave." (ECF No. 14-7, at 2).  In her declaration, Ms. Silver provided two recent examples of other Silver Psychotherapy employees who took extended leave.  One employee needed extended

13

leave for medical reasons in October 2022, and April and October 2023. (ECF No. 14-7, at 2). The other employee needed leave for a planned surgery and recuperation in January 2023. (*Id.*). In both cases, prior to the employees taking leave, the employees were not assigned new patients. (*Id.*). Although the parties seem to dispute whether Plaintiff agrees this policy is a good policy, Plaintiff's agreement is not necessary for Defendants to meet their burden for a nondiscriminatory explanation.

Additionally, in her declaration, Ms. Silver stated that she offered Plaintiff short-term clients and other administrative tasks to help Plaintiff reach her twenty-five hour a week requirement. (ECF Nos. 14-2, at 8-9; 14-7, at 2-3). Therefore, Defendants have put forth a nondiscriminatory explanation for their actions, and the burden shifts to Plaintiff to show that the explanation was a pretext.

### c. Evidence of Pretext

Plaintiff does not clearly argue how Defendants' explanation is pretext. In her opposition, Plaintiff reiterates how Defendants "stopped assigning clients to the Plaintiff," "attempted to force the Plaintiff to perform unpaid secretarial work," "threaten[ed] to convert the Plaintiff to part-time status," "forc[ed] the Plaintiff's constructive termination," and "fail[ed] to confirm Plaintiff's hours and support her [l]icensed [c]linical

14

[p]rofessional [c]ounselor application." (ECF No. 20, at 9). Plaintiff also argues that "non-pregnant employees were not treated in the same manner." (*Id.*)

Plaintiff concludes that Defendants "did not have a legitimate non-discriminatory reason for the actions that they directed against the Plaintiff," (ECF No. 20, at 18), and that the question of pretext is for the jury. (ECF No. 20, at 20). These positions are not supported by any evidence.

Plaintiff fails to argue, let alone show, how Defendants' extended leave policy that applied to all therapists who needed extended leave was really a pretext for discrimination against her as a pregnant woman. She does not identify any non-pregnant person with a comparable need for leave who was treated differently. Therefore, Defendants' motion for summary judgment will be granted as to this claim.

### 2. Count II: Title VII Retaliation Claim, Defendant Silver Psychotherapy

Plaintiff alleges that Silver Psychotherapy violated Title VII by retaliating against her when she engaged in the protected activity of complaining of discrimination and filing a charge of discrimination with the EEOC. (ECF No. 1 ¶¶ 46, 48). Defendants argue that Plaintiff has not shown any adverse action occurred because of her complaints. (ECF No. 14-1, at 16).

a.    **Prima Facie Case**

To establish a prima facie retaliation case, Plaintiff must establish: "(i) 'that [she] engaged in protected activity,' (ii) 'that [her employer] took adverse action against [her],' and (iii) 'that a causal relationship existed between the protected activity and the adverse employment activity.'" *Sempowich*, 19 F.4th at 653 (quoting *Foster*, 787 F.3d at 250).

i.    **Protected Activity and Adverse Actions**

Defendants do not dispute that Plaintiff engaged in protected activity by complaining internally that she was being discriminated against and by filing a charge of discrimination with the EEOC. Rather, Defendants argue that Plaintiff has not shown any adverse action taken against her because of the protected activity. (ECF No. 14-1, at 16). Plaintiff argues that she has identified several adverse actions: reassignment of her clients, change of duties from counseling work to administrative tasks, internal disciplinary actions, Ms. Silver's stating she would not verify Plaintiff's hours or support her licensing application, and constructive discharge. (ECF No. 20, at 12-14).

> [T]he adverse action "need not be employment or workplace-related in order to sustain a retaliation claim." [] [*Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018); *see also Burlington Northern [& Santa Fe Ry. Co. v. White]*, 548 U.S. [53,] 64 [(2006)], 126 S.Ct. 2405 ("[T]he antiretaliation provision, unlike the substantive provision, is not

16

> limited to discriminatory actions that affect
> the terms and conditions of employment.");
> *Barnes v. Charles Cty. Pub. Schools*, 747 Fed.
> App'x 115, 119 (4th Cir. 2018) (per curiam)
> ("An adverse action need not affect the terms
> and conditions of employment" in a retaliation
> claim.) Thus, "[t]he scope of Title VII's
> anti-retaliation provision . . . is broader
> than the anti-discrimination provision."
> *Strothers*, 895 F.3d at 327.
>
> Title VII's "antiretaliation provision
> protects an individual not from all
> retaliation, but from retaliation that
> produces an injury or harm." *Burlington
> Northern*, 548 U.S. at 67, 126 S.Ct. 2405; *see
> also Ray [v. Int'l Paper Co.]*, 909 F.3d [661,]
> [] 667 [(4th Cir. 2018)]. So, "retaliatory
> actions do have to be 'materially adverse'—
> such that they 'might have dissuaded a
> reasonable worker' from engaging in protected
> activity." *Strothers*, 895 F.3d at 327 (quoting
> *Burlington Northern*, 548 U.S. at 68, 126 S.Ct.
> 2405). . . .

Gaines v. Balt. Police Dep't, 657 F.Supp.3d 708, 744 (D.Md. 2023).

## 1. Reassignment of Clients and Change of Duties

Plaintiff argues that the reassignment of clients and the "change of her duties from clinical counseling work to secretarial tasks" were adverse actions. (ECF No. 20, at 12). In addition to the legitimate non-discriminatory reason Defendants have put forth for these actions as discussed above, Plaintiff has not shown that these actions occurred as a result of the protected activity of complaining. In fact, these were the very actions of which she complained. Therefore, these cannot be adverse actions for retaliation.

## 2. Internal Disciplinary Actions

Plaintiff argues that her negative performance review and formal disciplinary write up constituted adverse actions. (ECF No. 20, at 13). Some courts in this district have found that internal disciplinary actions such as a personal improvement plan or an informal or formal reprimand do not constitute an adverse employment action. *See, e.g.*, *Gaines*, 657 F.Supp.3d 708, 744 (D.Md. 2023) (citing cases that find actions such as "a personal improvement plan," "a verbal reprimand," "a formal letter of reprimand," or "a proposed termination" as insufficient for an adverse employment action). Other courts have found that when considered together, multiple disciplinary actions and negative evaluations can create a genuine dispute of material fact as to whether the actions are adverse. *See, e.g.*, *Howerton v. Bd. of Educ. of Prince George's Cnty.*, No. 14-CV-0242-TDC, 2015 WL 4994536, at *17 (D.Md. Aug. 19, 2015) (finding that multiple disciplinary actions could constitute a materially adverse employment action). At this stage, Plaintiff has shown multiple instances of disciplinary actions that, when taken together with the actions discussed below, create a genuine dispute of material fact as to whether the actions are adverse.

### 3. Verification of Hours and Support for Licensing Application

Plaintiff contends that after she filed her EEOC charge of discrimination, Ms. Silver told Plaintiff "that she would not verify [Plaintiff's] counseling hours" or "support [Plaintiff's] application." (ECF No. 20-3, at 4).  On July 21, 2023, Ms. Silver provided multiple negative ratings on Plaintiff's Clinical Supervision Experience Verification and Professional Reference Assessment form for the Maryland Department of Health and answered "no" to the question of whether she would "recommend this [a]pplicant for licensure as a clinical professional counselor." (ECF No. 20-9, at 3-4).  Plaintiff contends that Ms. Silver rated her "very poorly" and provided comments that were "false." (ECF No. 20-3, at 4).

Refusing to support an employee's licensing application may suffice for an adverse action. *Cf. Kane v. Advanced Care Staffing, LLC*, No. 21-CV-4306, 2023 WL 5753675, at *14 (E.D.N.Y. Sept. 6, 2023) ("Courts have found that an employer's refusal, post-termination, to provide a reference or a letter of recommendation can constitute an adverse action.").

### 4. Constructive Discharge

Plaintiff argues that she was constructively terminated because "[a]fter Ms. Silver indicated that she would not recommend [Plaintiff] for licensure, continued employment with Silver

Psychotherapy was futile because [Plaintiff] would never earn or acquire the hours necessary to get her clinical professional counselor license." (ECF Nos. 20, at 14; 20-3, at 4).

"A constructive discharge may also sustain a claim of discrimination or retaliation under Title VII." *Jordan v. Lonza Walkersville, Inc.*, No. 24-CV-1128-MJM, 2025 WL 975050, at *6 (D.Md. Mar. 31, 2025) (citations omitted).

> A claim of constructive discharge arises when an employee resigns because the "circumstances of discrimination" made the employee's working conditions "'so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 136 S. Ct. 1769, 1776, 195 L.Ed.2d 44 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 148, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004)). . . .
>
> Regarding the "intolerability" of the work environment, the Fourth Circuit recently instructed in *Perkins [v. International Paper Company]*, 936 F.3d [196,] [] 211-12 [(4th Cir. 2019)](internal quotation marks and citations omitted):
>
> "Intolerability" is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign. Instead, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign . . . that is, whether he would have had no choice but to resign.

> The "frequency of the conditions at issue" is an important part of the intolerability assessment. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (citing *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1132 (4th Cir. 1995)). "The more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." *Evans*, 936 F.3d at 193.

*U.S. Equal Emp. Opportunity Comm'n v. Greyhound Lines, Inc.*, 554 F.Supp.3d 739, 753-54 (D.Md. 2021).

While Plaintiff has shown that Ms. Silver's refusal to support an employee's licensing application may suffice for an adverse action, this action is not "so intolerable" that a reasonable person in Plaintiff's position would have felt compelled to leave the job. Although it may have been difficult or impossible for Plaintiff to earn her clinical professional counselor license while employed at Silver Psychotherapy, there are other reasons for employment, and a reasonable person may have stayed to earn a living. Therefore, Plaintiff has not shown that Defendants' actions constituted constructive discharge.[7]

### ii. Causal Relationship

> "A plaintiff may attempt to demonstrate that a protected activity caused an adverse action

---

[7] Plaintiff requests back pay, among other relief, (ECF No. 1, at 10-11), and Defendants object. (ECF No. 14-1, at 17-19). Summary judgment is granted in favor of Defendants as to Plaintiff's constructive termination claim; therefore, the issue of back pay is no longer relevant.

> through two routes." *Johnson [v. United Parcel Serv., Inc.]*, 839 Fed.Appx. [781] [] 783-84 [(4th Cir. 2021)]. A plaintiff may establish the existence of facts that "suggest[ ] that the adverse action occurred because of the protected activity." *Id.* (citing *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (recognizing that "relevant evidence may be used to establish causation")). A plaintiff may also establish that "the adverse act bears sufficient temporal proximity to the protected activity." *Id.* (*citing Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)).

*Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021).

Plaintiff has established the existence of facts "that suggest that the adverse action occurred because of the protected activity" by contending that following her charge with the EEOC, Ms. Silver told Plaintiff she would not confirm her hours or support her application. She also establishes temporal proximity because she states that she complained internally on May 18, 2023, and she received a "formal disciplinary write up for insubordination" on June 1, 2023. Additionally, Plaintiff filed the charge with the EEOC on June 2, 2023, and Ms. Silver completed the licensing form approximately seven weeks later, on July 21, 2023.

### b. Legitimate Non-discriminatory Reason

Defendants do not address Plaintiff's contentions that Defendants retaliated against Plaintiff by failing to support her

22

licensing application. Additionally, Defendants do not respond to provide any potential alternative explanation for Ms. Silver's statements or the disciplinary write up. Therefore, Defendants have not met their burden, and their motion for summary judgment will be denied as to this claim.

**B. Count III: Maryland Wage Payment and Collection Law Claim, Defendants Silver Psychotherapy and Ms. Silver**

Plaintiff alleged that Defendants violated the MWPCL by unlawfully withholding her wages. (ECF No. 1 ¶ 54). Plaintiff argues that she "was owed $11,864.00 for 370.75 'indirect client service hours'" that she performed from November 22, 2022, through July 1, 2023. (ECF No. 20-3, at 2). Plaintiff states that under the Agreement, she was supposed to be paid $32 an hour, but Defendants failed to pay her for this time. (ECF No. 20-3, at 2).

In their motion for summary judgment, Defendants argue that this amount is too low on its own to be filed in state circuit court, and once Plaintiff's federal claims have been extinguished, the court should decline to exercise supplemental jurisdiction. (ECF No. 14-1, at 19). Plaintiff has a remaining federal claim, and the court will not decline to exercise supplemental jurisdiction over the state law claim at this stage.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted in part and denied in part.  A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW

United States District Judge
